# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2009

No. 09-10550
Summary Calendar

Charles R. Fulbruge III
Clerk

DAVID LACY,

Plaintiff - Appellant

v.

DR NFN SHAW

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC 3:08-CV-450

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Appellant David Lacy ("Lacy") filed this suit arising under 42 U.S.C. § 1983, alleging that he was denied medical care for schizophrenia during the eight months that he was incarcerated in the Navarro County Jail in Texas. Lacy sued the Navarro County Sheriff's Office Medical Department and several named parties; the only remaining defendant in this appeal is Grady C. Shaw

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("Dr. Shaw"), Medical Director for the Navarro County Jail. The district court granted summary judgment in favor of Dr. Shaw. We now AFFIRM.

## I. BACKGROUND

Lacy has a history of mental health problems and treatment, beginning in adolescence, when he was prescribed Ritalin for attention-deficit disorder, and continuing to the present day. Lacy alleges that in 1999 and 2000 he was diagnosed with schizophrenia at the Jester Hospital in Richmond, Texas and treated with Haldol, Thorazine and Seroquel. During the eight months he was incarcerated as a pre-trial detainee at the Navarro County Jail, Lacy submitted twelve requests to be seen at "sick call," which is the day each week that Dr. Shaw sees prisoners. Lacy was seen nine or ten times during sick call: six times during the next sick call after his request, and three or four times within two weeks of his request.[1] The remaining two requests came within a day or two of an evaluation by Dr. Shaw and dealt with the same problem that had just been evaluated; they were therefore not granted. Lacy alleges that his sick call requests documented his anxiety, depression, insomnia, and schizophrenic symptoms, including hearing voices. At one point some confusion over a medication prescribed by Dr. Shaw that was not ordered left Lacy with anxiety and insomnia that went untreated for four to five weeks. According to Lacy his schizophrenia was never treated insofar as he was not prescribed particular anti-psychotic medications that he claims were necessary to treat his symptoms and that had provided relief for his symptoms in the past.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). A party is entitled to summary

---

[1] The record is not precisely clear as to these numbers, but the difference between being seen 9 or 10 times out of 12 requests is not material to the subsequent analysis.

judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).

## III. ANALYSIS

The doctrine of qualified immunity provides protection against suit to government officials unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We apply a two-step test, now discretionary, to determine whether government officials are entitled to qualified immunity. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). First, the plaintiff must show that he suffered a constitutional violation, and then we must determine whether the action causing the violation was objectively unreasonable in light of clearly established law at the time of the conduct. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

The Fourteenth Amendment requires the state to provide for the "basic human needs" of pretrial detainees, including the right to adequate medical care. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). In order to establish a constitutional violation of this right, a detainee must show that the defendant acted with deliberate indifference to his serious medical needs, meaning that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Id.* at 647-48. In other words, a detainee must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). A delay in

providing medical care is not a violation of this constitutional right unless it results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Further, negligent medical care does not constitute a valid § 1983 claim. *Id.*

Lacy alleges that, throughout his detention, he was in need of certain medications to treat his schizophrenia, and that Dr. Shaw was deliberately indifferent in failing to provide such medications despite knowing that Lacy had been previously diagnosed with schizophrenia and was currently reporting schizophrenic symptoms (hearing whispering voices). Dr. Shaw's affidavit attests that Lacy never presented any true symptoms of schizophrenia and that Lacy was never disorganized, hallucinatory, or delusional. The report of a neutral expert agreed upon by both parties found that the symptoms with which Lacy presented were not suggestive of psychosis or schizophrenia, but of malingering and drug-seeking.

The evidence presented may raise a genuine issue of fact as to whether Lacy was actually suffering from schizophrenic symptoms during his incarceration, but it comes nowhere near raising a genuine issue of material fact as to whether Dr. Shaw acted with deliberate indifference to Lacy's complaints. Lacy submitted twelve sick requests and saw Dr. Shaw nine or ten times, usually at the next sick call after the request was submitted. Dr. Shaw prescribed medication for Lacy's anxiety, depression and insomnia, and adjusted the medication and dosage when necessary. Lacy's alleged symptom of schizophrenia, hearing whispering voices, did not strike Dr. Shaw or the independent expert as being consistent with schizophrenia, particularly in conjunction with Lacy's affect and presentation.

At most Lacy's allegations give rise to an inference that Dr. Shaw knew Lacy had previously been diagnosed with schizophrenia and was presenting with symptoms that Dr. Shaw believed were consistent with anxiety, depression, and

insomnia – all of which Dr. Shaw treated. Dr. Shaw's failure to acquiesce to Lacy's insistence that he required a particular regimen of medications Dr. Shaw did not find appropriate does not rise to the stringent level of deliberate indifference in the provision of medical care to a detainee. The four-week delay in treating Lacy's insomnia and anxiety appears to have resulted from some confusion concerning the entering of an order for a prescription Dr. Shaw in fact provided. Even if this lapse were Dr. Shaw's fault, Lacy has not alleged any substantial harm from this moderate delay, and it therefore does not rise to the level of deliberate indifference.

## IV. CONCLUSION

For the foregoing reasons the judgment of the district court is AFFIRMED.